# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| SAM D. SCHMIDT, | |
| Plaintiff, | Case No. 2:01-CV-0865-KJD-PAL |
| v. | **ORDER** |
| CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO CERTIFICATE NUMBER M980076D021, UNDER CONTRACT NUMBER 392-M980076, et al., | |
| Defendants. | |

Currently before the Court are Defendants' Motion for Partial Summary Judgment (#132) and Plaintiff's Request for Judicial Notice of Adjudicative Facts (#145). Defendants filed the instant Motion for Partial Summary Judgment (#132) on May 4, 2007. Plaintiff filed a Response (#134), to which Defendants filed a Reply (#137). Plaintiff then filed a Sur-Reply, integrated with his Request for Judicial Notice (#145). Defendant Gorsine filed an Opposition (#148) to Plaintiff's Request for Judicial Notice, and Defendant Certain Underwriters at Lloyd's London (Underwriters) filed an Objection to Plaintiff's Request for Judicial Notice, and a Response to Plaintiff's Sur-Reply (# 149, 150). The matter is currently set for trial on July 30, 2007.

**I. Background**

The current case relates to an insurance policy issued to Plaintiff, race car driver Sam Schmidt (Schmidt) by Defendant Underwriters on March 28, 1999, for which he paid a premium of $14,000. Plaintiff originally brought this action in State Court for declaratory relief that he is entitled to benefits of the insurance policy at issue. John Gorsline (Gorsline) was the agent for the insurance transaction. The term policy was in effect from January 5, 1999, to January 4, 2000. On December 24, 1999, Defendant Underwriters advised Gorsline that coverage was available for Plaintiff for an additional year at a premium of $17,800. On January 3, 2000, Gorsline sent Plaintiff a letter quoting the premium of $17,800 for an additional year, together with notification that the existing policy would expire on January 5, 2000. Enclosed with the insurance quote was a premium bill for that amount and a Motor Sports Renewal Proposal form. Plaintiff Schmidt did not return the payment or Motor Sports Renewal Proposal form, but instead faxed back to Gorsline the January 3, 2000 letter and the premium bill along with his own notation "Sorry, John . . . I don't have a contract to drive yet unfortunately! I'll call you. Sam." Upon receipt of the response, Gorsline understood that Schmidt did not want coverage renewed and advised Underwriters of that fact.

Subsequently, on January 6, 2000, Plaintiff was permanently injured while test driving a race car in Orlando, Florida. Thereafter, on January 11, 2000, Schmidt caused a check to be issued for $17,800, backdated to January 5, 2000—the date of expiration of the first policy and the day before the accident—and caused the same to be sent via overnight delivery to Defendant Gorsline. On January 21, 2000, Defendant Underwriters declined insurance coverage for the accident of January 6, and subsequently returned Plaintiff's check for the premium.

It is uncontested that Plaintiff returned to racing on January 6, 2000, without informing Underwriters of his intention to do so.

On August 2, 2004, Defendants filed a Motion for Summary Judgment (#71) that was subsequently granted by the Court (#95). In its Order granting summary judgment, the Court determined that Plaintiff's coverage under the policy at issue terminated on January 5, 2000, because

Plaintiff did not accept the offer of renewal and because Plaintiff did not tender the $17,800 premium payment until after the accident of January 6.  Furthermore, the Court denied consideration of Plaintiff's liability theory based on alleged violations of Nevada insurance statutes for untimeliness because Plaintiff had failed to raise any claim under said theory until after the discovery cut-off, (almost four years following the filing of the action).

Plaintiff appealed the Court's Order granting summary judgment, and on December 4, 2006, the Ninth Circuit issued an Order reversing this Court's decision and remanding the case.  The Court of Appeals found that a material issue of fact remained as to whether Plaintiff's fax to Gorsline constituted a rejection of the offer, and whether his subsequent acceptance of the offer was effective. The Court of Appeals also found that this Court should have addressed Plaintiff's state law theories on the merits.

On remand, the parties submitted a Joint Pretrial Order on March 26, 2007,  including lists of stipulated and disputed facts and issues.  In the Pretrial Order, Plaintiff contends that his coverage under the policy continued in effect at the time of his accident due to the applicability of Nevada insurance statutes.  Specifically, among Plaintiff's issues of law are the following:

1. Is the subject policy an "individual health Policy [sic]" as defined by Nev. Rev. Stat. §681A.030?
2. Was the increase in annual premium from $14,000 to $17,800 an altered term of renewal requiring at least sixty (60) days written notice pursuant to Nev. Rev. Stat. §687B.420?
3. Did the coverage continue until at least January 6, 2000 in the absence of notice by Lloyd's pursuant to Nev. Rev. Stat. §687B.330(2), which only allows Lloyd's to cancel or non-renew the policy on its anniversary by giving notice of cancellation or non-renewal thirty (30) days before January 4, 2000?
4. Was the policy required to include a thirty (30) day "Grace period" for the payment of renewal premium pursuant to Nev. Rev. Stat. §689A.070?
5. Is Lloyd's prohibited from coordinating the benefits of its individual Policy with benefits paid under a group plan pursuant to nev. Rev. Stat. §689A.230(2)(b)?

(Joint Pretrial Order at 14.)  Defendants filed the instant Motion for Partial Summary Judgment on May 4, 2007, seeking that the Court dismiss Plaintiff's issues of law in relation to the application of Nevada insurance statutes to Plaintiff's policy.

## II.  Standard of Law for Summary Judgment

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  See Celotex, 477 U.S. at 323.  The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).

All justifiable inferences must be viewed in the light must favorable to the nonmoving party.  See Matsushita, 475 U.S. at 587.  However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials provided by Rule 56(e), showing there is a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The court need only resolve factual issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant.  See Lujan v. Nat'l Wildlife Fed'n., 497 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment).  "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment.  Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 248.

The task of examining the policy at issue and the effect of application of Nevada insurance statutes upon said policy is a matter of law appropriately before the Court at this time.

### III. Analysis

As stated above, Defendants seek summary judgment on Plaintiff's issues of law in relation to the application of Nevada insurance statutes to Plaintiff's policy. Plaintiff's first, fourth, and fifth issues of law listed in the Joint Pretrial Order require a determination of the type of policy that was issued to Plaintiff. Plaintiff claims that the policy is "health insurance" as defined under NRS §681A.030, and/or "individual health insurance" subject to NRS Chapter 689A. In opposition, Defendants argue that the policy is "surplus lines insurance" to which the requirements of NRS Chapters 689A and 681A.030 do not apply.  In addition, Defendants argue that Plaintiff's second issue of law regarding notice of nonrenewal pursuant to NRS § 687B.420 does not apply because the policy is not one specified by the statute, and that Plaintiff's third issue of law regarding notice of cancellation under NRS § 687B.330(2) does not apply because the policy was issued for less than one year.

#### A. Individual Health Policy

The Nevada Revised Statutes define several types of insurance, including casualty insurance, health insurance, marine and transportation insurance, property insurance, surety insurance, and title insurance. See Nev. R. Stat. Chapter 681A. Additionally, Nevada law also provides for surplus lines insurance whereby certain insurance coverages may be procured from unauthorized insurers if otherwise unprocurable from authorized in-state insurers. N.R.S. § 685.040.

Here, Plaintiff contends that the policy at issue is a health insurance policy as defined by NRS § 681A.030, and thereby is subject to Nevada insurance statutes governing "individual health insurance." Defendant contends that surplus lines insurance is a supplement to, as opposed to a subset of, NRS Chapter 681A insurance, and as such, the policy is not subject to the regulations and requirements of regular "health insurance" under Nevada law.

Under NRS § 681A.030, health insurance is defined as,

> [I]nsurance of human beings against bodily injury, disablement or death by accident or accidental means, or the expense thereof, or against disablement or expense resulting from sickness, and every insurance appertaining thereto, together with provisions operating to safeguard contracts of health insurance against lapse in the event of strike or layoff due to labor disputes

While at first blush the policy at issue may appear to fit within the definition of health insurance under Nevada law, a closer examination reveals that the policy was never intended to be "health insurance" or "individual health insurance" as Plaintiff now contends.

Black's Law Dictionary defines surplus lines insurance as "[i]nsurance with an insurer that is not licensed to transact business within the state where the risk is located." BLACK'S LAW DICTIONARY 807 (7th ed. 1999).  More specifically, surplus lines insurance exists for those cases or circumstances involving risks considered too big, unusual, or substandard to meet an insurer's regular internally established guidelines.  In such cases, when state authorized insurers refuse coverage, or when the insured is unable to procure coverage from a licensed broker within the state, a broker may procure surplus lines insurance.  All states have enacted surplus lines statutes that establish procedures an agent or broker must follow when procuring policies from insurance companies not admitted to do business in the state.  The purpose of these stringent regulations is due, in large part, to the fact that the insured will not be entitled to recover from the state's guaranty fund in the event the nonadmitted insurer becomes insolvent.  See Couch on Insurance (3d ed.) §§ 172:73, 57:58–57:78.  Moreover, in most states, surplus lines coverage cannot be placed with an insurer that has not been placed on an approved list maintained by the state's designated regulatory authority.  Id.

Nevada law requires certain conditions be met for the export of surplus lines coverage.  Namely, the insurance must be procured through a licensed surplus lines broker, must not be procurable by an authorized insurer within the State, and the export of said insurance cannot be solely for the sake of procuring a lower premium rate than would be accepted by an authorized insurer.  NRS 685A.040.  Furthermore, a surplus lines broker is required to execute an affidavit

setting forth facts from which it can be determined whether such supposed surplus lines insurance is eligible for export. See NRS § 685A.050.

Here, Plaintiff has proffered no evidence that any authorized insurance carrier within Nevada was willing to offer the coverage Plaintiff sought at the time the policy was purchased.[1] Furthermore, it is undisputed that Defendant Underwriters is not an eligible insurer certified to transact business in Nevada, but was listed as an eligible surplus lines insurer by the State's surplus lines regulatory agency, the Nevada Surplus Lines Association (NLSA).[2] As stated above and explained on the NSLA website, surplus lines insurance typically covers activity considered "high risk [such as] explosive manufacturing," risks that do not "fit standard market underwriting, require[] higher limits than offered by standard markets, excessive loss history, [and] speciality coverage." See http://www.nsla.org/static/about.asp. Here, Plaintiff obtained a highly specialized insurance policy that charged a heavy premium and provided for the type of injury that might result from a race car crash. Further evidence of the atypical nature of the policy at issue is that it specifically makes provisions for losses caused while participating in certain declared motor racing activities.[3]

While the Court does not imply that such insurance is so atypical that it could not be offered by authorized insurers within the State, the Court notes that the policy goes beyond the scope of general health insurance and covers loss caused by an activity that is extremely high risk. For this reason, and for the reasons listed above, the Court finds that Plaintiff's insurance policy does not

---

[1] See discussion below. In attempt to prove that an authorized insurance provider in Nevada offered the full coverage of Plaintiff's policy at the time the policy was issued, Plaintiff has filed a Request for Judicial Notice (#152) asking the Court to take judicial notice that United of Omaha Life Insurance Company issued a life insurance policy in North Carolina to cover the life of former race car driver Dale Earnhardt. The Court finds said irrelevant to the immediate discussion.

[2] The NSLA was created by Nevada's legislature in 1995 to oversee and report surplus lines. See Nevada Administrative Code § 685A.350.

[3] Specifically, the policy does not cover losses directly or indirectly caused or contributed by injury "while riding or driving in any kind of race or endurance test, other than whilst participating in the motor racing activities declared to Windsor Insurance Brokers Limited prior to inception of [the] policy"; and by "the injured person engaging in all hazardous sports or activities other than motor racing unless specifically agreed to by Underwriters." (#78 at 29.) (emphasis added).

7

meet the definition of health insurance defined in NRS § 681A.030, but is indeed a surplus lines policy.

Plaintiff also contends that the policy at issue cannot qualify as surplus lines insurance because Gorsline failed to comply with Nevada's statutory regulations for surplus lines brokers. In response, rather than contending that such statutes do not apply, Defendant Underwriters argues that Gorsline's failure to comply with said regulations does not preclude Plaintiff's policy from designation as surplus lines insurance. Accordingly, Defendant Underwriters has brought a Third Party Complaint against Gorsline for indemnification, should they be found liable due to any breach of duty on Gorsline's part.[4]

Defendants have produced no evidence that Gorsline made an effort to procure insurance from a licensed carrier prior to Underwriters issuing its alleged surplus policy or that Gorsline executed a surplus lines affidavit. However, in spite of any alleged failure of Gorslines to comply with Nevada law for surplus lines brokers, the Court has established that the policy at issue is a surplus lines policy as opposed to basic health or individual health insurance. Though admittedly, the filing of an affidavit or other action taken to register the policy as surplus lines insurance would assist in proving the intent of the parties, Gorsline's actions and/or inactions have no bearing on the Court's interpretation of the policy on its face. Nevada law provides remedies against brokers who fail to comply with statute. That a surplus lines policy may not have been brokered properly is no reason for the Court to interpret the policy to be anything other than what it is on its face.

As stated above, Plaintiff's first issue of law is whether the subject policy is an "individual health policy" as defined by Nev. Rev. Stat. 681A.030. Similarly, Plaintiff's fourth and fifth issues of law involve Chapter 689A of the Nevada insurance statutes, governing "individual health insurance." Specifically, section 689A.070 imposes a grace period on renewal of personal health

---

[4] On October 8, 2002, Underwriters also filed a Third Party Complaint against New York broker, John Gorsline and The Gorsline Company (hereinafter collectively referred to as "Gorsline"), the broker who negotiated the policy transaction with Plaintiff, seeking indemnification from Gorsline in the event Underwriters is found liable because of any breach of duty on Gorsline's part. (See Joint PreTrial Order at 2).

8

insurance, and section 689A.230(2)(b) provides for coordination of benefits between two insurers who may be providing personal health insurance coverage to a single insured.

Having determined that the policy at issue is not health insurance, but rather, surplus lines insurance, the Court also finds that Plaintiff's fourth and fifth issues of law relating to personal health insurance do not apply. For these reasons, the Court hereby grants Defendants' Motion for Summary Judgment as to Plaintiff's first, fourth, and fifth issues of law.

### B. Premium Increase

Plaintiff's second issue of law listed in the Joint Pretrial Order involves whether the increase in the annual premium from $14,000 to $17,800 constitutes an altered term of renewal requiring at least sixty (60) days written notice pursuant to Nev. Rev. Stat. § 687B.420. Defendants contend that the notice of renewal or alteration of terms provision does not apply because the policy at issue is not one specified by the statute. The Court agrees.

NRS § 687B.420 provides,

> An insurer shall not cancel, fail to renew or renew with altered terms a policy or contract issued pursuant to chapter 688B, 689A, 689B, 689C, 695A, 695B, 695C, 695D or 695F of NRS unless notice in writing of the proposal is given to the insured at least 60 days before the date the proposed action becomes effective. The notice must include, without limitation, any changes in specific rates by line of coverage.

In sum, the statute provides that eight different types of insurance be subject to a sixty (60) day notice requirement. Those eight types of insurance are: 688B (Group Life), 689A (Individual Health), 689B (Group and Blanket Health), 689C (Health Insurance for Small Employers), 695A (Fraternal Benefit Societies), 695B (Nonprofit Corporations for Hospital, Medical, Dental Services), 695C (Health Maintenance Organizations), 695D (Plans for Dental Care) or 695F (Prepaid Limited Health Service Organizations). As discussed above however, the subject policy is not health insurance and cannot be considered an individual health policy pursuant to NRS Chapter 689A. Therefore, the policy does not fall under any of the eight insurance types listed in NRS § 687B.420.

1  For this reason, Defendant's Motion for Summary Judgment regarding Plaintiff's second issue of law
2  is hereby granted.

### C. Coverage Continuance

4  Plaintiff's third issue of law listed in the Joint Pretrial Order questions whether Plaintiff was
5  entitled to sixty (60) days notice of cancellation pursuant to NRS § 687B.330.  The statute provides
6  that a policy issued for a term longer than one year may only be cancelled by the insurer giving
7  notice of the of the cancellation sixty days before the policy's anniversary date.  NRS § 687B.330.
8  An examination of the policy at issue indicates that Plaintiff's policy provided that the
9  insurance coverage "shall be effective from 5th January 1999 to 4th January 2000.  On its face
10 therefore, the policy was not issued for a period longer than one year, and the statute does not apply.
11 For this reason, the Court finds that Defendant's Motion for Summary Judgment regarding Plaintiff's
12 third issue of law is granted.

### D. Plaintiff's Motion for Judicial Notice

14 Plaintiff filed the immediate Request for Notice of Adjudicative Facts (#145) on June 22,
15 2007.  Plaintiff seeks that the Court take judicial notice of eight proposed facts regarding a life
16 insurance policy issued by Mutual of Omaha Insurance Company to professional race car driver Dale
17 Earnhardt in North Carolina in 2000-2001.  In lieu of the discussion above, the Court finds this
18 Motion irrelevant.  The Court also finds that the Motion fails in substance.  Fed. R. Evid. 201 states
19 that a Court may take judicial notice of a fact "not subject to reasonable dispute in that it is either (1)
20 generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and
21 ready determination by resort to sources whose accuracy cannot reasonably be questioned."
22 The alleged facts of which Plaintiff seeks the Court take judicial notice are neither generally
23 known within the jurisdiction of this Court, nor are they capable of appropriate accurate and ready
24 determination.  Plaintiff submits several sources taken from the world-wide-web as well as a court
25 document describing a lawsuit filed on behalf of Earnhardt's family involving a life insurance claim
26 against Mutual of Omaha Insurance Company, allegedly sold by Defendant Gorsline.  Plaintiff seeks

that the Court accept such documents as sources whose accuracy cannot be questioned to establish the following facts (hereinafter referred to as the "Earnhardt facts"):

> 1. In the 2000-2001 time frame at issue in the present case, United of Omaha Life Insurance Company issued life insurance in the amount of $3,700,000 to cover the life of famed professional race car driver Dale Earnhardt (see the true and correct copies of various published media reports attached hereto as Exhibit A);
>
> 2. United of Omaha Life Insurance Company is an admitted and licensed insurer in the State of Nevada (see the true and correct copy of the Nevada Insurance Commissioner's verification of United of Omaha's active status attached hereto as Exhibit B);
>
> 3. The United of Omaha insurance policy covering Mr. Earnhardt was sold by John Gorsline of The Gorsline Company, who are also defendants in the present case (see Exhibit A and the true and correct copy of the Stipulation of Dismissal With Prejudice filed in Richard Childress Racing Enterprises, Inc. v. United of Omaha etc., North Carolina Superior Court Case No. 02 CVS 01938, attached hereto as Exhibit C;
>
> 4. The United of Omaha insurance policy was selected by Earnhardt and his employer from among two competing insurance offers - one from United of Omaha and one from another unidentified company;
>
> 5. The United of Omaha insurance coverage on Mr. Earnhardt was in addition to another in-force $3,500,000 policy that had previously been issued on the life of Mr.
>
> 6. Upon Mr. Earnhardt's death in a professional race, National Life of Vermont paid the benefits under their policy, but United of Omaha declined payment on the alleged ground that Mr. Earnhardt had not completed a medical examination, although United had accepted the application and premium payments;
>
> 7. As a result of the denial of benefit payment, a lawsuit was filed in North Carolina against United of Omaha, John Gorsline, The Gorsline Company and others;
>
> 8. At the conclusion of presentation of evidence in the Earnhardt trial, the court directed a verdict against the defendants on the breach of contract claim, and the parties then entered into a confidential settlement.

Plaintiff's Motion fails substantively. The Earnhardt facts are not generally known within this Jurisdiction, nor does the Court find that the documents submitted in support of Plaintiff's Motion are "sources whose accuracy cannot be questioned." Fed. R. Evid. 201. Additionally, as pointed out by Defendants, the facts of which Plaintiff seeks the Court take judicial notice are not free of reasonable dispute. Pursuant to Fed. R. Evid. 201, and based on the documents before it, the

11

Court cannot take judicial notice of the facts presented in Plaintiff's Motion. Therefore, accordingly, Plaintiff's Request for Notice of Adjudicative Facts (#145) is denied.

Moreover, in line with the Court's determination discussed above, the Court finds Plaintiff's Request for Notice of Adjudicative Facts irrelevant. That Mutual of Omaha may have been an authorized insurer in Nevada at the time Schmidt bought his policy, and that Mutual of Omaha may have issued a life insurance policy to a race car driver in another state has no bearing on this Court's determination of whether the policy at issue in this matter qualifies as a surplus lines policy. As discussed above, evidence that a surplus lines policy may not have been brokered properly does not require the Court to interpret the policy to be anything other than what it is on its face. Here, the Court has established that the policy at issue is a surplus lines policy.

**IV.  Conclusion**

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion for Partial Summary Judgment (#132) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Request for Notice of Adjudicative Facts (#145) is **DENIED**.

DATED this 19th day of July, 2007.

Kent J. Dawson
United States District Judge